NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMAD MUMTAZ, Plaintiff, v. ETIHAD AIRWAYS AND AIRLINES, Defendant. | Civil Action No. 12-cv-2051 OPINION |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon motion by defendant, Etihad Airways and Airlines[1] (hereinafter "Etihad" or "Defendant") for summary judgment (the "Motion" or "Motion for Summary Judgment"). (ECF No. 35). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Defendant's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

I. BACKGROUND

A. Undisputed Facts

This action arises from an alleged injury to the Plaintiff, Ahmad Mumtaz (hereinafter "Plaintiff"). Plaintiff was a passenger aboard Defendant, Etihad Airways' flight EY101 from Abu Dhabi to New York on November 17, 2009. (Statement of Undisputed Facts ("SOUF"), ECF No.

---

[1] Incorrectly sued as "Etihad Airways and Airlines," the Defendant is Etihad Airways P.J.S.C.

35-15, ¶ 1). This flight was apparently part of Plaintiff's round-trip transportation of New York to Delhi, India, through Abu Dhabi. (Id. ¶ 2). Upon arrival, Plaintiff exited the aircraft under his own power without any assistance from Etihad staff. (Id. ¶ 19). From there, Plaintiff made a report to a police officer from Port Authority of New York and New Jersey which did not reference that Plaintiff sustained any injuries on board an Etihad aircraft but rather that he was "dizzy." (Id. ¶¶ 20-21). Nor did this report indicate that Plaintiff had an open wound on his head or was wearing a blood-stained shirt. (Id. ¶ 22). While the facts of how the injury occurred are disputed by the Plaintiff, what is undisputed, is that on November 17, 2009 Plaintiff was treated at Jersey City Medical Center. (Id. ¶ 3). The Jersey City Medical Center medical records indicate that the Plaintiff "Denies [loss of consciousness] but has a 3cm lipoma[2] just off of vertex that looks like it has been there for years, there is no hair over this area. PT states this just happened although it does not look acute and is non-tender." (Id. ¶ 25). Several days after the alleged incident, Plaintiff had this cyst removed from his head. (Id. ¶ 26). By way of letter dated November 17, 2009, Plaintiff submitted a claim to Defendant Etihad for the alleged loss of his baggage in the amount of $500,000.00 without any mention of any injury sustained on the flight. (Id. ¶ 27).

## B. Disputed Facts

The events and occurrences leading to Plaintiff's alleged injury are disputed by the Parties and even contradicted by various recounts by the Plaintiff himself. The Court details all evidence by way of a timeline for the purposes of this Motion. November 17, 2009 was the date of the alleged injury to the Plaintiff. As a preliminary matter, there is no evidence of Plaintiff being

---

[2] This is generally a benign tumor composed of adipose tissue (body fat). It is the most common benign form of soft tissue tumor  Bancroft LW, Kransdorf MJ, Peterson JJ, O'Connor MI (October 2006). "Benign fatty tumors: classification, clinical course, imaging appearance, and treatment". *Skeletal Radiol.* 35 (10): 719–33.

2

injured on the flight outside of Plaintiff's own testimony. The time at which he was allegedly injured on the flight, and where the injury occurred, remains contradicted by the Plaintiff himself. Upon arrival, Plaintiff apparently became dizzy and sought assistance from airport security who then contacted the Police of the Port Authority of New York and New Jersey. (See Transcript ECF No. 35-3 at 78-83). According to the "Aided" Report prepared by the attending officer, the listed place of occurrence was "Terminal 4" and the description of the incident was that the "subject was feeling dizzy and cold," but Plaintiff disputes this and states he was bleeding and told the officer he was injured on the plane. (ECF No. 35-6). The Aided Report also indicated that an ambulance had been called (which Plaintiff did not utilize). (Id.). Approximately eight hours later, Plaintiff undisputedly went to Jersey City Medical Center (hereinafter "JCMC") for treatment. (*See* ED Physician Doc., ECF No. 35-4). The "Triage Notes" of JCMC's report explain Plaintiff has "hit his head inside airplane bath room comi[n]g back from India," which Plaintiff also disputes. (Id. at 1).[3] The report also indicates the site of injury was not bleeding but rather "lipoma...does not look acute and is non-tender," while Plaintiff states he went to the hospital because his head was cracked open. (Id.).

Plaintiff has alleged different accounts of when the incident took place. Plaintiff filed the Complaint in this action on or about November 14, 2011 alleging that Defendant negligently and carelessly stored baggage which became loose and struck Plaintiff on his head when he was attempting to exit the plane. (Compl., ECF No. 1, ¶¶5-6). However, on September 12, 2012 and in response to Defendant's Interrogatory No. 1, Plaintiff states that "during the approach for landing the overhead bin opened and a bag fell on him." (ECF No. 35-5 at 1). By Plaintiff's

---

[3] Capitalization omitted.

3

deposition on January 24, 2014, Plaintiff testified that about halfway through the flight, the overhead bin opened and a bag fell upon him. (ECF No. 35-3 at 64). Therefore, it is unclear when the alleged injury actually occurred.

**C. Defendant's Current Motion**

Defendant seeks summary judgment primarily because "Plaintiff has provided four conflicting versions of how or when the alleged incident occurred." (Def. Br., ECF No. 35 at 2). Defendant points the Court to evidence which refutes Plaintiff's own self-serving testimony and asks the Court to conclude that, as a matter of law, no *genuine* dispute of material fact exists in this case. Plaintiff opposed Defendant's Motion by way of a two (2) page letter. (ECF No. 43).[4] Plaintiff's only opposition points the court generally to exhibits attached to Defendant's moving brief (transcripts from a deposition of Plaintiff and arbitration hearing) and claims these alone establish "all elements required for potential liability against the defendant." (ECF No. 43 at 1-2).[5] Plaintiff also states that "under long standing law governing summary judgment, when there are genuine issues of material fact relative to the happening of the accident … [s]ummary judgment would not be warranted…." (Id. at 2). Notably, Plaintiff does not point the Court to any specific genuine issues of fact, nor any relevant precedent.[6]

---

[4] Plaintiff's Opposition is unreadable on the docket and has been printed and re-formatted for review by the Court.
[5] The Court notes that Plaintiff, as the non-moving party, may not defeat summary judgment by simply resting on the argument that the record contains fact sufficient to support his claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *O'Donnell v. U.S.*, 891 F.2d 1079, 1082 (3d Cir.1989). Rather, the non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e).
[6] The Court is mindful that when a party asks the Court to consider evidence which it fails to provide in response to the summary judgment motion in question, the District Court has no obligation to sift through the record in deciding the motion. *Boomer v. Lewis*, 541 F. App'x 186, 191 (3d Cir. 2013).

4

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1273 (Fed. Cir. 2010). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-243 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). With this framework in mind, the Court turns now to Defendant's Motion.

## III. DISCUSSION

The parties do not contest that this case is governed by the Warsaw Convention, as modified by the Montreal Interim Agreement, where Article 17 establishes the liability of international air carriers for harm to passengers. *Air France v. Saks*, 470 U.S. 392, 397 (1985). It states the following:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

*Id.* The significant features of this provision for our purposes are the terms "bodily injury" and "accident." In considering these terms, the Supreme Court has explained that in order to determine whether an accident occurred, the court must consider "all of the circumstances that surrounded the passenger's injuries." *Id.* at 405. Additionally, the Supreme Court noted that because any injury is the product of a chain of causes, it required only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger. *Id.* As the Court will discuss below, in the present case this standard is not met as it is unclear if Plaintiff suffered any "bodily injury" at all.

Finally, the Court admits on the outset of this discussion that whether Plaintiff has sustained injuries due to an "accident" is normally a factual dispute. The Court's analysis will not contradict this notion. However, at some point in analyzing the totality of evidence in a case, the Court must determine if this factual dispute is actually "genuine" as required by the summary judgment standard. Perhaps a parallel consideration the Court should note, is the distinction between concluding that a fact-finder may, by chance, interpret something from the evidence, as compared to a *reasonable* fact-finder's conclusions. As articulated below, because Plaintiff has failed to set forth specific facts showing there is a *genuine* dispute for trial as to whether there was an "accident" causing an injury, it finds also that a reasonable fact-finder could not return a verdict for the Plaintiff in this case as to the issue of whether or not an injury was caused.

### A. The Factual Dispute is not Genuine

The factual dispute regarding the Plaintiff's alleged injury in this case arises from an overwhelming myriad of evidence favoring the Defendant, which is only disputed by Plaintiff's

own account of the incident without any other credible evidentiary corroboration.[7] That is, the *only* evidence offered by Plaintiff is his own uncorroborated testimony that there was an incident on the plane which caused an injury. Not only can Plaintiff not support his testimony with specific facts or documentary evidence, his testimony is contradicted by strong evidence showing Plaintiff sustained *no* injury on board the flight in question.

While the Court will not make credibility determinations on a motion for summary judgment, the Court must, to some degree, find some consistencies in Plaintiff's allegations from which a reasonable jury could find the injuries he claims as his basis for this lawsuit. If Plaintiff cannot reasonably prove he sustained an injury, summary judgment must be awarded to the Defendant. While the location and time of the alleged injury is not determinable, perhaps the most consistent part of Plaintiff's testimony is that he was bleeding profusely from his head as a result of his injury.[8] This appears in fact to be the only unswerving injury claimed by Plaintiff due to a bag falling from an overhead bin. Indeed, Plaintiff states in his interrogatory answers that he "sustained trauma to the head along with laceration and cuts and bleeding of the scalp." (ECF No. 35-5, ¶5). Further, Plaintiff's sworn testimony on two occasions explains there was "too much blood" and there was "a lot of blood" which stained his shirt. (Arbitration Transcript (hereinafter

---

[7] The Court notes just a few discrepancies for the sake of brevity: 1) Plaintiff claims he told the doctor at Jersey City Medical Center that his head was hurt from a bag falling, (Tr. 92:16-23), however the medical report indicates he hit his head in the lavatory; 2) Plaintiff claims that after they examined him at Jersey City Medical Center they gave him stitches, which again, there is no report of; (Tr. 97:19-25); 3) Plaintiff explains there was turbulence which caused the bag to fall although no turbulence was reported by the flight; (Tr. 54:1-21); 4) Plaintiff says that two men and three women made a report of the incident, (Tr. 61:12-22), in fact no actual report was made; 5) Plaintiff explains that because of the accident his hair is gone and doesn't grow which sharply contradicts the hospital report that the area close to the injury did not have any hair upon arrival; (Tr. 98:12-15); and 6) Plaintiff states he received bandages for his bleeding injury while onboard, which there is no medical report of. (Arb. Tr. 11:18-20).

[8] The Court has reviewed Plaintiff's deposition and while many of the allegations asserted regarding the incident by Plaintiff are contradictory and all out confusing, Plaintiff indisputably alleges that there was a lot of blood as a result of this alleged incident on the plane.

7

"Arb. Tr."), ECF No. 35-7, 10:7). (Tr. 67:5-68:12). The Court however, cannot in good faith give this issue of fact to a jury when the following evidence provides the contrary conclusion.

First, and perhaps most importantly, Plaintiff not only waited about eight (8) hours to go to the hospital, but the medical report identifies no specific injury that could be determined to have occurred that day, and states that the injury occurred when Plaintiff "hit his head inside airplane bathroom" which would not qualify as an "accident" to ensue liability.[9] (ECF No. 35-4 at 1). Indeed, the report states Plaintiff "denies [loss of consciousness] but has a 3cm lipoma just off the vertex that looks like it has been there for years, there is no hair over this area. [Plaintiff] states this just happened although it does not look acute and is non-tender." (Id.). Not only does this report state a different cause of the "injury" it seems to indicate there was no identifiable injury at all outside of a pre-existing cyst. The Court notes that there is no mention of any blood or cut to verify Plaintiff's account of this incident.

The next set of facts that point towards a lack of proof of Plaintiff being injured while aboard the plane in question, stems from the lack of reports made by the airplane staff as well as their sworn testimony, juxtaposed to Plaintiff's contentions. Michael Callen Pass (hereinafter "Mr. Pass") has been employed with Defendant as part of the cabin crew since 2009 and was a member of the crew on Plaintiff's flight. (Decl., ECF No. 35-10 at ¶¶2, 5). Mr. Pass states that while he understands Plaintiff's claims, "Etihad has very stringent reporting requirements for any on-board medical incident or event where an In-Flight Medical Report must be completed

---

[9] "In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury," with the caveat that there is no accident "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Air France,* 470 U.S. at 405. *See also Manion v. Am. Airlines, Inc.,* 17 F.Supp.2d 1, 5 (D.D.C.1997) ("Summary judgment can only be granted if, as a matter of law, the Court concludes that plaintiff's injuries were not caused by an accident pursuant to the Warsaw Convention.").

each and every time a passenger is injured or becomes ill during a flight," and no such In-Flight Medical Report documenting his injuries and any medical care was prepared. (Id. ¶¶6-7, 9).

Similarly, Mr. Pass explains that there was no "Cabin Manager Report" prepared which would "definitely" mention any bleeding injury suffered by a passenger, nor was the Captain informed of any such incident to complete an "Air Safety Report." (Id. ¶¶12, 13). Notably, there was however a reported Air Safety Report for a different passenger on that flight who was suffering from stomach cramps. (Id. ¶13). Mr. Pass, in sum, explains that based upon the fact that there is no report of any kind relating to any incident involving the Plaintiff (*i.e.* no In-Flight Medical Report, no entry in the Cabin Manager Report and no Air Safety Report) and the fact that he "would have recalled if such incident happened in a flight operated by [him]" he does not believe Plaintiff was injured as he alleges in the lawsuit. (Id. ¶15).

Lastly, the Aided Report taken by a Port Authority officer explains the Place of Occurrence of the incident was Terminal 4 and it only reported that Plaintiff was "dizzy" and "felt cold." (ECF No. 35-6). Plaintiff alleges the injury he suffered was a laceration to his head and on the flight there was "a lot of blood" which stained his shirt. (Tr. 67:5-68:12). This Report makes no mention of Plaintiff bleeding or having any sort of injury on the aircraft which is of particular note given the Aided Report was completed right after Plaintiff's arrival and presumably very close to the time of the incident. Thus, the only evidence of record pertaining to Plaintiff's alleged injuries is Plaintiff's self-serving testimony stating that he suffered a severe bleeding head injury, which was not corroborated or even mentioned in any report or evidence of record. This is not enough to

9

overcome summary judgment on the facts before the Court since no reasonable trier of fact could find, based on the evidence of record, in favor of the Plaintiff.

## B. A Reasonable Fact-Finder Could Not Find There was an Accident that Caused the Injury[10]

To defeat summary judgment nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, the summary judgment standard does not denote what a fact-finder may find upon delusion, but rather what a *reasonable* fact-finder could conclude from the evidence presented. Upon review of the evidence, it is apparent that a reasonable juror could not conclude that Plaintiff's injury (if any) arose from an accident on the airplane in question. This Court shall not be permit this Plaintiff or any, to rely exclusively on unsubstantiated speculation, but rather he must offer some evidence showing that his version of the events is reasonable. Such would in essence, eliminate the summary judgment standard and allow any Plaintiff to create a genuine dispute of material fact by reasoning the evidentiary equivalent of "Because I said so."

To grant summary judgment, the Court would need to conclude that Plaintiff has failed to establish his injury was caused by an "accident" on the aircraft, but it would be equally sufficient if Plaintiff has failed to establish an injury. The Court gives the nonmoving party the benefit of

---

[10] Plaintiff's opposition to summary judgment referred to testimony that "clearly established that he was injured due to an accident while on the airline" with no citation to the record. As the Third Circuit has observed, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir.2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (internal quotation marks omitted)). If factual support for Plaintiff's claim existed in the record, it was incumbent upon him to direct the Court's attention to those facts. *DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 119-20 (3d Cir. 2012). Plaintiff did no such thing.

10

all reasonable inferences on this Motion. *Bray v. Marriott Hotels,* 110 F.3d 986, 989 (3d Cir.1997). Unfortunately, many, if not all of the inferences Plaintiff asks this Court to draw from his ever-changing testimony, are unreasonable. To conclude that Plaintiff was injured from an accident onboard the aircraft would certainly require one to undertake a suspension of disbelief. To allow unreasonable inferences to be drawn from Plaintiff, this Court would be drastically limiting the possibility that summary judgment could ever be granted because virtually any contrary testimony by a plaintiff would preclude a grant of summary judgment to the defendants. *Pamintuan v. Nanticoke Mem'l Hosp.,* 192 F.3d 378, 387 (3d Cir.1999).

This Court is guided by the Second Circuit case of *Jeffreys v. City of New York.* 426 F.3d 549 (2nd Cir. 2005). In *Jeffreys*, the Court granted summary judgment in favor of the Defendants on the basis that the Plaintiff's testimony, largely unsubstantiated by any other direct evidence, was "so replete with inconsistencies and improbabilities" that no reasonable juror would "undertake the suspension of disbelief" necessary to credit the Plaintiff's allegations. *Id.* at 551. Indeed, the Plaintiff in *Jeffreys* alleged that while police officers arrested him, they beat him and hit him over the head with a flashlight. *Id.* at 552. However, contrary to Plaintiff's claims, upon examination, a doctor found no evidence of any head trauma nor evidence of external injury consistent with Plaintiff's recount of his injuries. *Id.* at 553. The Court explained that:

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff.

*Id.* at 554 (internal citation omitted). Such a holding is applicable to the facts before this Court.

11

Plaintiff's own account of the alleged incident is unclear and inconsistent. Even placing aside Plaintiff's various recounts of the events leading to his injury, there is no evidence that supports Plaintiff's allegations that he was cut on the head from a falling bag. What *is* supported, is that Plaintiff boarded a flight, disembarked the same flight, began feeling dizzy, and was diagnosed with a cyst that he had on his head well before the flight.[11] While the Court of course will not make these findings of fact at the summary judgment stage, suffice it to say that the allegations of the Plaintiff are patently contradicted by the plethora of evidence before the Court. The Court is particularly cognizant that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (emphasis added). Apart from Plaintiff's testimony, the Court has yet to be pointed to a scintilla of evidence favoring the Plaintiff.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**. An appropriate Order accompanies this Opinion.

Date:  December 30th, 2014

Jose L. Linares
United States District Judge

---

[11] The Court notes that not once in Plaintiff's deposition does he express that any alleged injury occurred as a result of exacerbating a pre-existing cyst or loss of consciousness. In fact, Plaintiff specifically refutes these possibilities. Rather Plaintiff explains that what occurred was severe and profuse bleeding. This is the only basis for his claim.

12